❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Records and information associated with the cellular devices<br>assigned call numbers (414) 736-8281, that is in the custody<br>or control of T-Mobile USA, as further described in Attachment<br>A | )<br>)<br>)<br>)<br>)<br>)    Case No. 23-929M(NJ)<br><br>   Matter No. 2022R00539 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 5/11/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 4/27/2023 @ 2:33 p.m. _____

*Judge's signature*

City and state:   Milwaukee, Wisconsin _____      Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R539**

1.      Records and information associated with the cellular devices assigned call numbers **(414) 736-8281** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the custody or control of T-Mobile USA referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R539**

## I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from July 1, 2022, to present:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

3

ii.   Source and destination telephone numbers;

iii.   Date, time, and duration of communication; and

iv.   All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c.   Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or

4

with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession with intent to distribute and distribution of controlled substances and conspiracy to possess with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841 and 846 have been committed by, are being committed, or will be committed by Jerry ALEXANDER aka "Will" (DOB XX/XX/71) and Jose CARDENAS-SALCIDO (DOB XX/XX/82) ,and other identified and unidentified subjects during the period of July 1, 2022 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.23-929M(NJ) |
| Records and information associated with the cellular devices | ) |
| assigned call numbers (414) 736-8281, that is in the custody or | )    Matter No. 2022R00539 |
| control of T-Mobile USA, as further described in Attachment A | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 & 846 | Distribution and possession with intent to distribute controlled substances, |
| 18 U.S.C. § 920(o) | conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SEAN MAYERBOCK (Affiliate)    Digitally signed by SEAN MAYERBOCK (Affiliate)
Date: 2023.04.26 14:22:50 -05'00'

*Applicant's signature*

HIDTA TFO Sean Mayerbock

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone    *(specify reliable electronic means)*.

Date: 4/27/2023

*Judge's signature*

City and state: Milwaukee, Wisconsin    Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
### Matter Number 2022R539

I, Task Force Officer Sean Mayerbock, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (**414) 736-8281**, with no listed subscriber (the "Target Cell Phone"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture

dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.      I am a Detective with the City of Brookfield Police Department and have been a sworn law enforcement officer for over 7 years.  I am currently assigned to the Milwaukee High Intensity Drug Trafficking Area (HIDTA) – Drug Gang Task Force.  HIDTA is composed of law enforcement officers from the Milwaukee Police Department (MPD), West Allis Police Department (WAPD), Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), and several other Federal and local law enforcement agencies.   Since November 2019, I have been a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5.      I am a Task Force Officer with the DEA and have been so since November 2019. I am currently a Detective with the Brookfield Police Department, and I have approximately 7 years of law enforcement experience. I have specialized training and experience in narcotics smuggling and distribution investigations. During my law enforcement career, I have participated in numerous narcotics investigations and have authored numerous affidavits supporting criminal complaints and search and seizure warrants. I have debriefed multiple defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I am familiar with narcotics traffickers' methods of operation including communications via Facebook messenger, cellular telephone/smart phone applications, text messaging services, and other traditional forms of communications. I am further familiar with

2

narcotics traffickers' methods including distribution, storage, importation, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking and money laundering. In the course of my work, I have become knowledgeable with the enforcement of federal laws pertaining to narcotics and dangerous drugs. I have participated in drug trafficking investigations conducted by the Wisconsin Department of Justice, Division of Criminal Investigations (DCI), HSI, the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), the United States Postal Service (USPS) and other law enforcement agencies, which resulted in the arrest of subjects, and the seizure of property, assets, and controlled substances. I am currently a member of the North Central High Intensity Drug Trafficking Area (HIDTA) Task Force assigned to the drug gang task force as an investigator specializing in the smuggling, trafficking, and distribution of dangerous and controlled substances. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers.

6. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of

3

my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  Throughout this affidavit, reference will be made to case agents or investigators. Case agents or investigators are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had contact regarding this investigation.

8.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of possession with intent to distribute and distribution of controlled substances and conspiracy to possess with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841 and 846 have been committed by, are being committed, or will be committed by Jerry ALEXANDER aka "Will" (DOB XX/XX/71) and Jose CARDENAS-SALCIDO (DOB XX/XX/82). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

9.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

4

## PROBABLE CAUSE

10.     In July 2022, the North Central HIDTA, Drug Gang Task Force, United States Postal Inspector Service (USPIS) and WAPD, began an investigation into the drug-trafficking activities of Leonard BROOKSHIRE, Jacque HERNANDEZ, Kevin PULLEY, Brittany BREWER, and others.  Investigators originally identified these individuals as members of the "BROOKSHIRE Drug Trafficking Organization," which had been distributing fentanyl from the Phoenix, Arizona metropolitan area to Milwaukee, Wisconsin.

11.     On July 21, 2022, the HIDTA initiated a drug investigation involving the trafficking of fentanyl from Chandler, Arizona to the West Allis, Wisconsin via the United States Postal Service (USPS). As a result of this investigation the USPIS were monitoring parcels from Phoenix, Arizona and the surrounding zip codes being sent to the Milwaukee Metropolitan Area.

12.     In September 2022 USPIS located a suspicious parcel with number USPS Express parcel number EI387224872US   (Subject Parcel 1) suspected to be linked to an on-going fentanyl investigation where fentanyl pills were being mailed via USPS from Chandler, Arizona to West Allis, Wisconsin. USPIS advised that the parcel was a Priority Express from "Richard Larcy" of XX35 South 38th Road Phoenix, AZ" to "Mr. Boykin" at XX16 North 14th Street Milwaukee, WI 53209.  The parcel was scheduled to be delivered on September 16, 2022. USPIS located an IP address of 216.9.178.191 (Orbitel Communications) related to Subject Parcel 1. As part of the investigation into Subject Parcel 1 and this DTO, case agents learned the IP address 216.9.178.191 was also tracking parcels sent to the addresses of XX25 North 91st Street. Milwaukee, WI, XX33 East Pleasant Street, # 207 Milwaukee, WI, and XX16 North 14th Street Milwaukee, WI.

5

13.     USPIS noted that after an arrest by case agents in the Chandler, Arizona fentanyl pill investigation on July 21, 2022, the addresses XX25 North 91st Street. Milwaukee, WI, XX33 East Pleasant Street, # 207 Milwaukee, WI, and XX16 North 14th Street Milwaukee, WI consistently started receiving USPS parcels from the Phoenix, Arizona area.  The parcels were being received on a weekly basis since August of 2022. Case agents were aware that the Chandler, Arizona source of fentanyl pills was alerted to an arrest of the West Allis co-conspirator in that investigation, so initially case agents believed these parcels might be related.

14.     On September 16, 2022, at approximately 11:11 a.m. case agents delivered the Subject Parcel 1 to the address of XX16 North 14th Street Milwaukee, WI 53209. Case agents were in the area and conducted surveillance on the USPS Express parcel delivered to XX16 North 14th Street Milwaukee, WI 53209. At approximately 11:25 a.m. case agents observed a black 2010 Chevrolet Traverse bearing Wisconsin license plate AMW-2924 (Traverse).  Case agents reviewed Department of Transportation (DOT) records and learned the Traverse was registered to Jamesha D. CRAWFORD (DOB XX/XX/1990) of XX56 North 14th Street, Milwaukee, WI, .2 miles south of the delivery location of XX16 North 14th Street, Milwaukee, WI.  The Traverse pulled up and park in front of XX16 North 14th Street, Milwaukee, WI. Case agents observed a female, later determined to be CRAWFORD through DOT records, exit the driver seat, walk up to the front porch and retrieve the Subject Parcel 1. CRAWFORD was on her cell phone and appeared to be reading the parcel label to someone on the cellphone. CRAWFORD was ultimately followed back to her residence of XX56 North 14th Street, Milwaukee, WI with Subject Parcel 1.

15.     USPIS obtained video surveillance footage from the USPS Lazeen, Arizona Office related to the mailing of Subject Parcel 1, from September 15, 2022. The sender of the

6

USPS Subject Parcel 1 was later identified as Leonard BROOKSHIRE (DOB XX/XX/1978) through DOT records.

16.     On September 29, 2022, information was obtained from USPIS that a USPS parcel was sent from Phoenix, Arizona to the XX50A North 28th Street, Milwaukee, WI (Subject Parcel 2). The IP address of 216.9.178.191 was checking Subject Parcel 2. This is the same IP address used in Subject Parcel, which was mailed to XX16 North 14th Street Milwaukee, WI 53209 on September 16, 2022.

17.     Subject Parcel 2 had a handwritten label addressed from "Brayan Ramirez" XX35 West Clarendon Avenue, Phoenix, AZ 85015. The handwritten label is addressed to "Mr. Boykin" XX50A North 28th Street (upper), Milwaukee, WI 53216.

18.     On September 29, 2022, at approximately 10:00 a.m., case agents observed a grey Chevrolet Malibu with Wisconsin license plate ANN-2542 (Malibu) parked in front of XX50A North 28th Street. Case agents reviewed DOT records and determined the Malibu was registered to Kevin J. PULLEY (DOB XX/XX/1988) of XX50 North 28th Street, Milwaukee, WI, the same address but for the "A" Subject Parcel 2 was mailed to. Case agents reviewed law enforcement databases which indicated PULLEY has a criminal history which includes narcotics, cocaine and marijuana, and firearm offenses. Case agents also reviewed records which indicated Anthony GREENLEE with cell phone 402-880-3706 had a WE Energy account for the address of XX50A North 28th Street, Milwaukee, WI since February 1, 2022.

19.     On September 30, 2022, Magistrate Judge William E. Duffin authorized a federal search warrant of Subject Parcel 2. Case agents executed the search warrant at the West Allis Police Department. Inside Subject Parcel 2 was a separate brown cardboard box with a "Duralast" brake pad sticker affixed to it. Inside of the brown cardboard box was old brake pads

7

and another black and yellow "Duralast Gold" cardboard box. Inside this box was hard "brick-like" substance wrapped inside of saran wrap. The size of the substance was consistent to a kilogram amount of controlled substances. Investigators peeled off multiple layers of saran wrap and observed some of the saran wrap was layered in oil/grease. Based on my training experience, drug traffickers will often place substances within the narcotics in order to avoid any law enforcement canine detection.  Once the layered will removed, case agents found a brick of a white substance with a number eight pressed into the brick.   Case agents used the "TruNarc" narcotics testing device on the white substance from Subject Parcel 2, which indicated the substance as being fentanyl and weighed with the result of approximately one kilogram.

20.     Subject Parcel 2 was being mailed to XX50A N. 28th St. Milwaukee, WI, but had the same fictitious recipient listed as "Mr. Boykin" as Subject Parcel 1. During the prior surveillance on September 16, 2022, Jamesha CRAWFORD was identified as the person who took possession of Subject Parcel 1 from the front of XX16 North 14th Street, Milwaukee, WI 53209.

21.     USPS Inspectors obtained video surveillance from the USPS located in Cashion, Arizona where Subject Parcel 2 was mailed.  The video depicted a Hispanic male and female shipping Subject Parcel 2 to XX50A North 28th Street (upper), Milwaukee, WI 53216.

22.     On October 4, 2022, case agents served a subpoena to Orbitel Communications pertaining to the IP address of 216.9.178.191, which was used in the mailing of Subject Parcel 1 and Subject Parcel 2. The 216.9.178.191 IP address had the customer identified as "Leonard BROOKSHIRE" at XX254 West Cowpath Road, Maricopa AZ 85138 and telephone number 406-261-2119.

8

23.     On October 12, 2022, Magistrate Judge Stephen C. Dries authorized a GPS tracking search warrant to be applied on a CRAWFORD's Traverse.

24.     On October 13, 2022, case agents executed the search warrant and installed the GPS device on the Traverse while it was parked in the alley directly behind XX56 North 14th Street Milwaukee, Wisconsin. GPS data collected from this warrant, was consistent with CRAWFORD's vehicle ongoing involvement with the DTO.

25.     USPIS continued to monitor data related to USPS parcels suspected to be related to this investigation. USPIS located parcels shipped by the BROOKSHIRE drug trafficking organization (DTO) that were delivered and not intercepted by law enforcement.

26.     One parcel was sent on October 12, 2022, at 1:37 p.m. to the same address Subject Parcel 1 was mailed, XX16 North 14th Street, Milwaukee, WI. (Subject Parcel 3). Subject Parcel weighed three ounces and the sender paid $39.10 to mail the parcel.  Subject Parcel 3 was delivered on October 13, 2022, at 11:57 a.m.   GPS data from CRAWFORD's Traverse indicated it arrived and stopped at the address of XX16 North 14th Street, Milwaukee, WI on October 13, 2022, at 11:58 a.m., one minute after Subject Parcel 3 was delivered, and then departed the area.

27.     On October 15, 2022, USPS seized parcel number 9570113639812287174011 (Subject Parcel 4) shipped from a USPS Office in Maricopa, Arizona and addressed to "Willie Boykin" of XX33 East Pleasant Street, Apt 207 Milwaukee, WI 53202.  A federal search warrant, authorized by Magistrate Judge Stephen C. Dries, was obtained and executed on Subject Parcel 4.

28.     Inside Subject Parcel 4 was an additional USPS box that contained Styrofoam and paper packaging and two white Nike t-shirts. The two white Nike t-shirts contained a

9

Tupperware container, which was wrapped in cellophane. Inside the Tupperware container were five individual plastic baggies, which contained fraudulent prescription M-30's (blue circular pills), which tested positive for the presence of fentanyl. Case agents believe there to be approximately 1,000 doses per baggie and in total the fentanyl weighed approximately 566 grams.

29. The recipient of the Subject Parcel 4 was identified as Jacque S. HERNANDEZ (DOB XX/XX/1978) at XX33 East Pleasant Street, Apt 207, Milwaukee, WI. The fentanyl was removed from Subject Parcel 4 and Subject Parcel 4 was delivered to XX33 East Pleasant Street, Milwaukee, Wisconsin. HERNANDEZ accepted the parcel and was arrested by case agents. HERNANDEZ provided consent to search his apartment and cell phone and ultimately identified BROOKSHIRE as the source of fentanyl from Arizona.

30. Case agents conducted a Mirandized interview with HERNANDEZ. HERNANDEZ identified BROOKSHIRE as his High School friend. He advised that BROOKSHIRE resides in Arizona and is the person who is sending him the USPS parcels. HERNANDEZ confirmed that BROOKSHIRE was the person who sent him Subject Parcel 4 and BROOKSHIRE calling HERNANDEZ with the contact title of "Vee" with the Arizona area code.

31. HERNANDEZ advised he received three prior USPS parcels from BROOKSHIRE over the past few months. HERNANDEZ denied opening any of the USPS parcels. HERNANDEZ said that he would be contacted by BROOKSHIRE after the USPS parcel was delivered to his apartment and BROOKSHIRE would give HERNANDEZ instructions to take the parcel to the Jetz gas station located at XX25 North Farwell Avenue,

10

Milwaukee, WI. Once there, HERNANDEZ picked up an envelope with money behind the dumpster and left the parcel.

32. HERNANDEZ denied knowing who picked up the parcels. He recalled that one prior parcel he met an unknown black male with dreads, wearing a face mask and driving a black Chevrolet SUV, possible a Traverse, at Tina's corner store located at XX18 North Franklin Street, Milwaukee, WI. HERNANDEZ stated that he was paid $200 for receiving and dropping off the parcels for BROOKSHIRE. HERNANDEZ admitted that this type of activity was consistent with something illegal being inside the USPS parcels however, HERNANDEZ denied knowing what was actually inside the parcels. HERNANDEZ said that he assumed it was marijuana. Case agents advised HERNANDEZ that the size of the parcels and the amount of trouble having these parcels delivered was not consistent with marijuana. Case agents advised HERNANDEZ that the USPS parcels contained large amounts of fentanyl. HERNANDEZ appeared to be upset by this and denied having any knowledge that the USPS parcels containing fentanyl.

33. HERNANDEZ provided verbal/written consent to search his cell phone and provided his passcode. HERNANDEZ confirmed that the contact name of "Vee" having telephone number 406-261-2119 was the cell phone number for BROOKSHIRE. Case agents extracted the call logs between HERNANDEZ's number 414-581-8037 and BROOKSHIRE's number 406-261-2119. Case agents located 95 contacts with each other between September 23, 2002, and October 15, 2022, and text massage strings showing 168 instant messages between August 25, 2021, and October 15, 2022.

34. On October 20, 2022, Magistrate Judge Stephen C. Dries authorized the pen register for 406- 261-2119. After the trap and trace order was executed, investigators observed

11

that BROOKSHIRE was no longer utilizing this phone number after the one-party consent phone call placed by HERNANDEZ. Based on cell phone analysis the cell phone 305-205-7451 was identified as BROOKSHIRE's new cell phone number.

35.    On December 7, 2022, Magistrate Judge William E. Duffin authorized a federal search warrant for electronic surveillance of BROOKSHIRE's cell phone number 305-205-7451. On December 7, 2022, the search warrant executed. Since the warrant was executed the electronic surveillance for BROOKSHIRE's cell phone number 305-205-7451 was consistently locate at the known address of BROOKSHIRE, XX254 West Cowpath Road, Maricopa, Arizona.  XX254 West Cowpath Road, Maricopa, Arizona is also the same address where IP address 216.9.178.191 is registered.

36.    Case agents have been in contact with Detective Jose Angulo of the Chandler Police Department in Arizona regarding the BROOKSHIRE DTO. On October 15, 2022, Detective Angulo checked the address of XX571 West Courtney Drive, Maricopa, Arizona 85138, which case agents determined was associated with BROOKSHIRE from review of law enforcement databases.  Detective Angulo observed a grey 2010 Honda Odyssey with Arizona license plate 1SA8SH registered to Laura Mae CASTANEDA (DOB XX/XX/1985) of XX571 West Courtney Drive, Maricpoa, Arizona.  Also, Detective Angulo observed a blue 2016 Kia Sportage with Arizona license plate DSA8B1A registered to Michael Anthony BENAVIDEZ (DOB XX/XX/198) of XX991 West Southampton Road, Surprise, Arizona 85374 parked in the driveway of XX571 West Courtney Drive, Maricpoa, Arizona. Detective Angulo provided an Arizona DOT photograph of Laura Mae CASTANEDA.   Laura Mae CASTANEDA resembled the Hispanic female who was present at the Arizona Post Office when the kilogram of fentanyl, Subject Parcel 2, was shipped.

12

37.     Also on October 15, 2022, Detective Angulo checked the address of XX254 West Cowpath Road, Maricopa, Arizona 85138, the location of IP address 216.9.178.191 used to track Subject Parcel 1, Subject Parcel 2, Subject Parcel 4, Subject Parcel 5 (described in more detail below) and other USPS parcels not intercepted/surveilled by law enforcement. Detective Angulo observed a white Infiniti SUV with no front plate backed in the driveway.  Detective Angulo also observed a black 2007 Lexus ES 4DR bearing Arizona license plate VWA4ZK (Lexus) parked in front of the residence at XX254 West Cowpath Road, Maricopa, Arizona. The Lexus was registered to Leonard V. BROOKSHIRE (DOB: XX/XX/1978 of XX254 West Cowpath Road, Maricopa, Arizona.

38.     Case agents know from USPS video surveillance in Laveen, Arizona that BROOKSHIRE utilized a black Lexus 4DR to drive to the USPS and delivered Subject Parcel 1. Subject Parcel 1 that was ultimately picked up at XX16 North 14th Street Milwaukee, Wisconsin by CRAWFORD.

39.     On October 31, 2022, case agents were contacted by USPIS regarding information obtained from IP address 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired), which were being used to track a parcel.  These IP addresses were tracking a USPS parcel number 9505 5121 4127 2300 6559 39 from Arizona being mailed to XX48 North 28th Street, Milwaukee, Wisconsin and it was suspected to be associated with the BROOKSHIRE DTO (Subject Parcel 5).

40.     Case agents received information Subject Parcel 5 was attempted to be picked up at the Post Office on October 29, 2022, in Milwaukee, Wisconsin by a female and male.

41.     Case agents were able to intercept Subject Parcel 5 prior to being delivered to the address on October 31, 2022. Case agents associated the address of X48 North 28th Street,

Milwaukee, WI with Yvonne M. ECHOLS (DOB XX/XX/1979), through DTO records. Case agents also determined Jaidion D. ECHOLS (DOB XX/XX/1997) of XX18 West Burleigh Street, Milwaukee, WI was associated with XX48 North 28th Street, Milwaukee, WI.

42. Case agents obtained a federal search warrant authorized by Magistrate Judge Stephen C. Dries. Case agents executed the search warrant on Subject Parcel 5, which contained one kilo of fentanyl, having the same RR marking as Subject Parcel 2 packaging and having a "006" stamp. Case agents used the "TruNarc" narcotics testing device on the white substance from Subject Parcel 5, which indicated the substance as being fentanyl and weighed with the result of approximately one kilogram.

43. On November 28, 2022, case agents obtained a subpoena regarding the records to the AT&T in regard to IP addressed 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired), which were being used to track to Subject Parcel 5. AT&T provided the subscriber for both 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired ) as Tenise JACKSON of 3218 West Oriole Drive Milwaukee, WI 53209-4127 having account number 113972554. The account was created on October 4, 2011, and has a member ID as tjackson9804@att.net and listed email TJACKSON9804@ATT.NET.

44. Case agents reviewed WE Energies records for 3218 West Oriole Drive, Milwaukee, WI and there is an account registered to Luis ALEXANDER since March 8, 1990. Case agents reviewed law enforcement databases which indicated Jerry W ALEXANDER (DOB XX/XX/1971) and Jeremy W. ALEXANDER (DOB XX/XX/1998) are also associated with the address of 3218 West Oriole Drive, Milwaukee, WI.

14

45.     On December 2, 2022, case agents were conducting surveillance at 3218 West Oriole Drive, Milwaukee, Wisconsin where the AT&T IP address 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired) is registered and being used to track BROOKSHIRE DTO parcels. Case agents obtained additional information from the USPIS that AT&T IP address 108.76.222.210 was used to track Subject Parcel 2 and Subject Parcel 5, both containing kilograms of fentanyl, while in transit from Arizona to Wisconsin.   Further, 2600.1700:b0d0:2e90: was used to track Subject Parcel 2 and Subject Parcel 5, which each contained about one kilogram of fentanyl, and Subject Parcel 4, which contained over a half kilogram of fentanyl pills.

46.     While conducting surveillance on December 2, 2022, at 3218 W. Oriole Dr. Milwaukee, Wisconsin, case agents observed a dark blue 2005 Acura TL with Wisconsin license plate  ARX-5650, which is registered to Wonderboys LLC. Case agents conducted an open social media search the Wonderboys LLC and found it is a Wisconsin Domestic Limited-Liability company filed on May 24, 2022.   The registered agent is identified as Zheniah JACKSON at 3218 West Oriole Drive, Milwaukee, Wisconsin. During this surveillance, case agents observed a woman, identified as Tensie JACKSON by case agents, exit the front door and throw a bag into the garbage. Case agents also observed a brown 2003 Chevrolet Impala with Wisconsin license plate ANF-3605 parked in the driveway of the 3218 West Oriole Drive, Milwaukee, Wisconsin.  Case agents reviewed records and determined the Impala is registered to Tensie JACKSON (DOB XX/XX/1969) of 3218 West Oriole Drive, Milwaukee, Wisconsin.

47.     On January 5, 2023, case agents obtained a federal search warrant authorized by Magistrate Judge Stephen C. Dries for the residence of 3218 West Oriole Drive, Milwaukee, Wisconsin. Case agents coordinated with law enforcement in Arizona, where a State of Arizona

15

search warrant was obtained for BROOKSHIRE'S known residence of XX254 West Cowpath Road, Maricopa, Arizona.

48.     On January 11, 2023, case agents executed the federal search warrant at 3218 West Oriole Drive, Milwaukee, Wisconsin and at XX254 West Cowpath Road, Maricopa, Arizona. BROOKSHIRE was arrested on a federal arrest warrant during the execution of search warrant at XX254 West Cowpath Road, Maricopa, Arizona.

49.     During the execution of the federal search warrant at 3218 West Oriole Drive, Milwaukee, Wisconsin, family members of Jerry ALEXANDER were present at the residence. During custodial interviews of the occupants, they identified Jerry ALEXANDER aka "Will" and they advised that he frequents 3218 West Oriole Drive, Milwaukee, Wisconsin. Through these custodial interviews and documents located at the residence, case agents observed Jerry ALEXANDER attempted to start an LLC, "JA Legacy Trucking" and that he frequented a bar in Milwaukee, Wisconsin in which his girlfriend owns. The name of "Val" was provided during the interview as Jerry ALEXANDER's girlfriend.

50.     On March 16, 2023, case agents spoke with CS 1 regarding CS 1 involvement with the BROOKSHIRE DTO.  CS 1 identified "Will" aka Jerry ALEXANDER as the contact that arranged/coordinated the kilos of fentanyl with the contacts in Arizona to Milwaukee, Wisconsin, which Leonard BROOKSHIRE would assist in mailing.  CS 1knew that Jerry ALEXANDER was affiliated with the "Oriole" street address in Milwaukee, Wisconsin. CS 1 stated Jerry ALEXANDER did prison time in the Arizona area in the past and this is where Jerry ALEXANDER met his ultimate sources of supply. CS 1 advised that in 2012/2013 CS 1 met Jerry ALEXANDER at a party in the Phoenix Arizona area, where several people from Milwaukee, Wisconsin were in attendance. CS 1 believed it was in Glendale, AZ. CS 1 recalled

16

that "Lito" aka Carlito, a black male, was the person who introduced CS 1 and Jerry ALEXANDER to each other.

51.     CS 1 advised that CS 1 was known as a marijuana, car and flooring person. CS 1 advised that this past year of 2022 CS 1 was contacted by Jerry ALEXANDER, who was looking for a car to purchase. CS 1 said that during these conversations Jerry ALEXANDER asked CS 1 to set him up with three pounds of marijuana. CS 1 said that about two to three weeks later CS 1 met up with Jerry ALEXANDER and sold him the three pounds of marijuana. This transaction was in the Phoenix Metro Area.

52.     CS 1 said that after a couple weeks Jerry ALEXANDER contact CS 1 again. Jerry ALEXANDER asked CS 1 if CS 1 knew anyone that wanted to "sell their address." Jerry ALEXANDER had people in Arizona send packages to Milwaukee, WI. CS 1 found a couple addressed to "sell," which were Jacque HERNANDEZ's and Kevin PULLEY's houses. CS 1 added that it was the address on Pleasant Street and North 28th Street off of Capitol Drive. CS 1 said that Jerry ALEXANDER stated he "would let [CS 1] know" if he was going to use the addresses. CS 1 did not hear from Jerry ALEXANDER until a few a few weeks. CS 1 said that Jerry ALEXANDER eventually called and asked if CS 1 was available to meet with the source.

53.     CS 1 agreed to meet the source in the Lavine, Arizona area. CS 1 was directed to a location by Jerry ALEXANDER, which was a bad neighborhood and near a business. CS 1 met with the source, described as Mexican male, 6'00", mid 30's, medium build, gap in his front teeth, dark hair, described a "clean cut", medium length hair, carrying a man purse. CS 1 observed that the source was driving a white Ford 2DR "lifted" pick up with black rims and Arizona plates. CS 1 added that this source was involved buying/selling vehicles and from a

17

conversation with Jerry ALEXANDER and was the "barber" at the prison that ALEXANDER met him at.

54. CS 1 advised that a few days later Jerry ALEXANDER instructed CS 1 to meet up with the Mexicans to retrieve a parcel. CS 1 recalled meeting a Hispanic/Mexican descent male at a Popeye's Chicken in the Phoenix Metro Area. Jerry ALEXANDER instructed CS 1 where to go. CS 1 grabbed a sealed package and pre-labeled parcel from this male and later dropped it off a United States Post Office in the Phoenix Metro Area. CS 1 said that no money was exchanged for the parcel, which was consistent with the shape/size of a "kilo."

55. CS 1 said that after this parcel was sent, a couple weeks later Jerry ALEXANDER called CS 1 and asked to do another "favor." CS 1 agreed and a couple days later Jerry ALEXANDER told CS 1 to meet another guy at the "Ranch Market" in the area of 35th Street and Thomas Street in Phoenix, Arizona. CS 1 arrived and there were four Hispanic/Mexican males, dressed up in Mariachi Band uniforms, whom were in a grey newer Grand Cherokee. CS 1 was directed to the trunk area. CS 1 opened the rear hatch and obtained the parcel. CS 1 recalled this being a 12x12x12 package and again it was pre-labeled. CS 1 did not pay them anything for this parcel and dropped it off at a Phoenix area US Postal Office. CS 1 remembered that Jerry ALEXANDER asked CS 1 to take a photograph of the label on this parcel and send it to him. CS 1 took the photograph from his cell phone and sent it to Jerry ALEXANDER.

56. CS 1 met with the initial source, with the gap in his front teeth, once for the introduction and three times to receive US parcels in order to mail out. CS 1 suspected that the US parcels contained a controlled substance, which CS 1 believed was most likely cocaine. CS 1 believed that this suspect was the nephew of the main source in Mexico. CS 1 believed this from conversations CS 1 had with the suspect and Jerry ALEXANDER. CS 1 was paid US Currency

18

for each parcel mailed and estimated it was in total $5,000. CS1 was paid by the person CS 1 met to pick up the parcels. CS 1 did not recall the exact addresses the parcels were being sent, but knew they were all addressed to locations in Milwaukee, Wisconsin. CS 1 added that Jerry ALEXANDER referred to the contents of the parcels as "work."

57.    CS 1 recalled also meeting with three other members of this DTO in the Phoenix area, in order to mail out US parcels containing controlled substances. CS 1 described one being a Hispanic female, 30's, driving a white pick-up truck having a Mexican flag as the head liner; the second as a Hispanic/Mexican male, 50's, driving a maroon 2004 Ford Escape whom CS 1 met at a Mexican Restaurant in the area of 51st and Thomas; and the third as a Hispanic/Mexican male, 40's, heavy set, driving a blue Ford F150, who was working in construction on a building at a Phoenix, AZ building.

58.    CS 1 denied opening any of the parcels, expect for the one sent to Jacque HERNANDEZ. When CS 1 picked up this parcel it didn't seem right, and CS 1 wanted to package it better. CS 1 opened the parcel and added some bubble wrap and other papers to secure the content. CS 1 denied opening the content that was wrapped inside the parcel.

59.    CS 1 said that during this time of dealing with Jerry ALEXANDER and mailing the parcels to Milwaukee, Jerry ALEXANDER instructed CS 1 to purchase a burner phone (flip phone that was later seized by case agents). CS 1 purchased the flip phone and provided the cell phone number to Jerry ALEXANDER. After purchasing the cell phone and giving the number to Jerry ALEXANDER, CS 1 received a phone call from a "52" number, which was from Mexico. CS 1 was instructed from the Source in Mexico to call "Jerry." CS 1 called Jerry ALEXANDER on CS 1's other phone, while still on the flip phone with the Mexico call. CS 1 denied ever

19

meeting the source from Mexico and only spoke with him on the phone. The caller from Mexico had a Mexican accent; however, spoke English well.

60.     CS 1 mailed the parcels to Milwaukee except two parcels.  CS 1 had a friend "Denica HENNING" send two parcels.  CS 1 had her send two of the parcels since CS 1 suspected something was going on.

61.     CS 1 sent a total of two parcels to Jacque HERNENDEZ's house on Pleasant St., one which went through to Jerry ALEXANDER and the other that was seized by law enforcement (5,000 M-30 fentanyl pills).

62.     CS 1 sent a total of two parcels to Kevin PULLEY's residence on North 28th Street, one which CS 1 was in Milwaukee for and actually picked up from Kevin PULLEY somewhere in the higher numbers off of Capitol Drive.  CS 1 brought this parcel to Jerry ALEXANDER at the house on "Oriole." CS 1 stated the other parcel was seized by law enforcement (kilo of powder fentanyl).

63.     CS 1 provided the new cell phone number of **(414) 736-8281**  (Target Cell Phone) for Jerry ALEXANDER aka "Will" and provided the address of 2573 Vel R Phillips Milwaukee, Wisconsin 53212 (Manhattan Club) as the establishment owned by Jerry ALEXANDER's girlfriend, and a location Jerry ALEXANDER frequents while in the Milwaukee area. CS 1 advised that Jerry ALEXANDER has been continuing to trip to Arizona and is believed to be continuing with the delivery/transportation of fentanyl.

64.     In April 2023 CS 1 provided information that the phone number for the Arizona SOS was saved under the contact of AMG2 in the flip phone seized by case agents. CS 1 added that this was the Hispanic male CS 1 first met with that was close to Jerry ALEXANDER and

incarcerated with him in Arizona (barber at prison). Case agents reviewed the seized cell phone and located a contact of AMG2 with telephone number (602) 283-8521.

65.    CS 1's information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this investigation.  The information has been verified through controlled deliveries, queries through law enforcement databases, surveillance and phone extractions. CS is cooperating with law enforcement for consideration on pending federal drug charges. CS has past arrests for prohibited possession of a firearm and driving while intoxicated.   CS has past conviction for felony theft.

66.    TFO Sean Mayerbock obtained an administrative subpoena for telephone (414) 736-8281 (TARGET TELEPHONE) and (602) 283-8521, which identified the service provider for both telephone numbers as T-Mobile.

67.    The cell phone records of (602) 283-8521 indicated cell phone is active with a listed subscriber of Jose CARDENAS-SALCIDO of XX07 West Weldon Avenue, Phoenix, Arizona. Case agents reviewed law enforcement databases which identified Jose CARDENAS SALCIDO XX/XX/1982 with a last known address of XX35 West Almeria Road, Phoenix, Arizona 85037. Law enforcement databases identified Jose CARDENAS SALCIDO as being affiliated with the Sinaloa Cartel and has been involved in money laundering and kilo amounts of drug smuggling investigations.

68.    Per the cell phone records **(414) 736-8281** (Target Cell Phone) the cell phone is active and has no listed subscriber.

69.    West Allis Crime Analyst located social media pages for Jose CARDENAS-SALCIDO as Instagram: josecardenassalcido and Cash App: $josecardenascalcido. On Jose

21

CARDENAS-SALCIDO's Instagram account, he posts several photographs of himself and had a post indicating he was in need for a dentist for problems with his teeth.

70.     Case agents took a photograph of Jose CARDENAS-SALCIDO from his Instagram account and showed it to CS 1. Case agents asked CS 1 if the person looked familiar and CS 1 positively identified Jose CARDENAS-SALCIDO as the Mexican male whom CS 1 was sent to meet by Jerry ALEXANDER, known as "AMG2" in CS 1's cell phone. CS 1 identified Jose CARDENAS-SALCIDO as the source of supply of the kilos of fentanyl seized during this investigation.

71.     West Allis Crime Analyst conducted a frequency call chart for **(414) 736-8281** (Target Cell Phone) and identified the top caller having a Mexico area code of "52," and number of 52-6674848819 between February 9th, 2023, and March 29th, 2023.  This information is consistent with the CS 1's statement that Jerry ALEXANDER is still engaged in drug trafficking with the Mexican source.

72.     Another top caller of **(414) 736-8281** (Target Cell Phone) was identified as Valarie WINGO having number (414) 202-5240. During this investigation "Val" was identified as the girlfriend of Jerry ALEXANDER.

73.     On January 11, 2023, during the execution of the federal search warrant at 3218 West Oriole Drive, Milwaukee, Wisconsin, family members of Jerry ALEXANDER were identified and provided contact numbers to case agents. Tenise JACKSON provided the contact number of (414) 218-2627 and Louise ALEXANDER provided number (414) 630-8907, both of these telephone numbers were in contact with the **(414) 736-8281** (Target Cell Phone) between March 10, 2023, and March 14, 2023 (one telephone contact each).

22

74.     I believe cellular telephones assigned call numbers **(414) 736-8281** (the "Target Cell Phone"), whose service provider is T-Mobile USA ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846.

## TECHNICAL BACKGROUND

75.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

76.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the

23

tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

77.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

78.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

79.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These

24

towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

80.    I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

81.    Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

82.    Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

25

83.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**D. Subscriber Information**

84.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

85.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone' user or users, the locations of that user or users, and the patterns of that user or users. A

frequency analysis of the telephone communications between Jerry ALEXANDER aka "Will" (DOB XX/XX/71) and Jose CARDENAS-SALCIDO (DOB XX/XX/82) and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Jerry ALEXANDER aka "Will" (DOB XX/XX/71) and Jose CARDENAS-SALCIDO (DOB XX/XX/82) and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V. AUTHORIZATION REQUEST

86.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

87.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

88.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The

27

government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

89.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R539**

1.       Records and information associated with the cellular devices assigned call numbers **(414) 736-8281** (referred to herein and in Attachment B as "the Target Cell Phone), that is in the custody or control of T-Mobile USA referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.       The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R539**

## I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from July 1, 2022, to present:

    i. Names (including subscriber names, usernames, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long-distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

30

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

31

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or

32

with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession with intent to distribute and distribution of controlled substances and conspiracy to possess with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841 and 846 have been committed by, are being committed, or will be committed by Jerry ALEXANDER aka "Will" (DOB XX/XX/71) and Jose CARDENAS-SALCIDO (DOB XX/XX/82) ,and other identified and unidentified subjects during the period of July 1, 2022 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

33